# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
### No. 14-191V
### (Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
KYLE AND SHANNON CARDA,         *
On behalf of G.J.C.,            *
                                *     Special Master Corcoran
          Petitioners,          *
                                *     Dated: August 19, 2016
          v.                    *
                                *     Attorney's Fees and Costs;
                                *     Reasonable Basis; Interim Fees;
SECRETARY OF HEALTH AND         *     Expert Costs
HUMAN SERVICES,                 *
                                *
          Respondent.           *
                                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Robert D. Trzynka*, Cutler & Donahoe, LLP, for Petitioners.

*Sarah C. Duncan*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### INTERIM ATTORNEY'S FEES AND COSTS DECISION[1]

On March 6, 2014, Kyle and Shannon Carda filed a petition on behalf of their minor child, G.J.C., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioners allege that G.J.C. suffered from intussusception as a result of receiving the Rotateq, rotavirus vaccine on January 23, 2013, and March 26, 2013. An entitlement hearing is set for January 24-25, 2017.

Petitioners have now requested an interim award of attorney's fees and costs, in the total

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

amount of $54,870.21. *See generally* Motion for Interim Attorney's Fees and Expenses, dated July 7, 2016 (ECF No. 40) ("Fees App."). Respondent does not oppose the request formally, but has suggested that the total sum requested is too high in light of fees awards issued in similar cases. For the reasons stated below, I hereby **GRANT IN PART** Petitioners' Motion, awarding at this time interim fees and costs of **$34,122.83.**

<strong>Procedural History</strong>

This action has been pending for approximately two and one-half years. Pet. at 1, filed March 6, 2014 (ECF No.1). As the billing invoices submitted in support of the fees application reveal, the Cardas's attorney, Robert Trzynka, Esq., began working on the matter in June of 2013, nine months before its initiation. *See* Attorney Invoice, filed as Ex. A to Fees App. in Notice, dated July 7, 2016 (ECF No. 41), at 1. The case has largely proceeded in an efficient manner. After the filing of Respondent's Rule 4(c) Report in June 2014, Petitioners filed three expert reports: two from Dr. John Santoro on December 16, 2014 (ECF No. 15), and June 25, 2015 (ECF No. 23), respectively, and then one from Dr. Yehuda Shoenfeld on November 3, 2015 (ECF No. 28). Respondent has filed four expert reports of her own, based upon the work of two experts.

Petitioners' interim request for an award of attorney's fees and costs was filed last month. In it, Petitioners argue that they have acted in good faith and have established a reasonable basis for their claim, and thus fees are generally appropriate. Fees App. at 2. They also maintain that the work performed on the matter has been reasonable, and that an interim award is appropriate under the circumstances. *Id.* at 2-3.

The Cardas specifically request that Mr. Trzynka be compensated at a rate of $200/hour for the 108.9 hours he has expended in this case thus far, for a total of $21,780. *See* Affidavit of Robert D. Trzynka, dated July 7, 2016 (ECF No. 41) at 2; Ex. A to Fees App. In addition, they request $31,674.51 in litigation expenses. Trzynka Aff. at 2. Of that figure, $23,055.00 reflects the costs incurred from Dr. Santoro's expert assistance, with an additional $7,325.00 for Dr. Shoenfeld. Fees App. at 3; Trzynka Aff. at 2.[3] And the Petitioners also request other costs, including both filing fees and document-gathering expenses as well as sales taxes. *Id.*

Respondent filed a brief commenting on the Fees Application on July 20, 2016 (hereinafter

---

[3] There is an unexplained discrepancy between Petitioners' statements about expert costs and the experts' own invoices, which were not included with the Fees Application but were subsequently filed at my request. *See* Exs. B and C to Fees App., filed with Notice, dated August 11, 2016 (ECF No. 44). Dr. Santoro's invoices total only $21,750.00, while Dr. Shoenfeld appears to have billed only $7,000.00. Exs. B and C. The interim award issued based upon this decision uses the invoiced amounts in calculating the award; to the extent Petitioners maintain that the additional sums set forth in their Fees Application are correct, Petitioners may request the balance after hearing, when seeking a final award of fees.

2

"Opp."). She maintained that the Vaccine Act does not contemplate that Respondent will play any role in adjudicating a fees request. Opp. at 2. She otherwise acknowledged that Petitioners have met the statutory requirements for an interim award. However, she objected to the total sum requested, arguing instead that the proper range for an interim award in this case would be $35,000.00 to $40,000.00, citing other cases as good comparisons. *Id.* at 3-4. She also argued that sales tax was not an appropriate component of any fees award, and that some of counsel's hours expended in becoming conversant with the Vaccine Program were inappropriately requested. *Id.* at 3 n. 3. Petitioners did not file a reply.


## ANALYSIS

### I.     Legal Standard Applicable to Fees and Costs Requests

I have in prior decisions discussed at length the standards applicable to determining whether to award fees on an interim basis, meaning while the case is still pending. *Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at \*6-9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Human Servs.,* No. 13-956V, 2015 WL 6181669, at \*5-9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015)**.** It is well-established that a decision on entitlement is not required before interim fees or costs may be awarded. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at \*8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). While there is no presumption of entitlement to interim fees and cost awards, special masters may in their discretion make such awards. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for costs are subject to the same reasonableness standards governing attorney's fees. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at \*16.

Here, Respondent does not challenge the propriety of an interim award. I find that circumstances justify such an award; the matter is scheduled for trial next year, thus imposing some hardship on Petitioners and their counsel if an award is not forthcoming prior to that date, and in the time since the petition's filing, Petitioners have acted diligently in the prosecution of the matter.


### II.     Challenges to the Amounts Requested for Petitioners' Attorneys

I must now evaluate what the magnitude of Petitioners' interim attorney's fee award should be. Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). Special masters may in their discretion reduce

attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

      Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended[4] on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id*. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

      Petitioners ask that Mr. Trzynka be compensated at the rate of $200 per hour. Based on my experience with Program cases, I find that this rate is reasonable, and shall apply it in calculating the fees award.

      Next, I must determine the reasonableness of the work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[5] The special master is not obligated to evaluate an attorney's billing records on a line-by-line basis in deciding a fee petition. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406

---

[4] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349, (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). Petitioners herein have not maintained that South Dakota constitutes a forum location, and otherwise request compensation at a facially reasonable hourly rate, so I will dispense with consideration of such matters.

[5] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

(1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only 58 percent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Respondent herein objects to only one category of work performed on the matter. Specifically, Respondent has identified multiple billing entries in which counsel appears either to have engaged in basic research about the Vaccine Program, or conferred with other experienced Program counsel about Vaccine Act claims. Opp. at 3 n.3. In support of the objection, she cites cases in which other special masters have eliminated such time from fees awards. *See, e.g., Carter v. Sec'y of Health & Human Servs.,* No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007).

Respondent's objection is well-founded. It is not appropriate for practitioners to bill time to a petitioner's claim becoming conversant with the Program, as such time epitomizes the sort of tasks an ordinary client would rightfully refuse to pay his attorney to perform (and therefore should not be recoverable from the Program). *Tedeschi v. Sec'y of Health & Human Servs.,* No. 02-1826V, 2016 WL 4266046, at *5 (Fed. Cl. Spec. Mstr. July 21, 2016). I will therefore eliminate some of the time associated with such tasks from the total interim fees award (although I will at the same time permit recovery for time associated with researching the claim itself, which I distinguish from time spent learning about the ins and outs of Program litigation). Based on my review of the invoices, 6.5 hours were devoted to such matters.[6]

Accordingly, I will compensate Mr. Trzynka for 102.4 hours of his time, for a total of **$20,480.00.**

## III.    Challenges to Requested Expert Costs.

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira*, 27 Fed. Cl. at 34; *Presault*, 52 Fed. Cl. at 670. Such costs include expert time incurred while working on a case. *Fester*, 2013 WL 5367670, at *16. When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

---

[6] Specifically, I am eliminating:  the .3 time entry for June 27, 2013; one hour of the 1.7 hours billed on July 11, 2013; two hours of the 4 billed on September 13, 2013; one hour of the 2 billed on September 26, 2013; the .3 time entry for December 6, 2013; .4 hours of the 2.2 hours billed on March 12, 2014; the .7 time entry for May 30, 2014; .5 hours from the 1 hour billed on May 7, 2015; and the .3 time entry for May 8, 2015. *See* Ex. A at 1-4.

In the past I have been reluctant to grant interim awards for expert costs when a case is soon to be heard, in part due to the fact that the expert's value to the litigation is best determined after the expert has testified. *Bell v. Sec'y of Health & Human Servs.*, No. 13-709, 2015 WL 10434882, at *3-4 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). An expert can be readily paid once the hearing is over, and his or her hearing time included in the request as well, thereby avoiding the need for piecemeal fees requests. At the same time, however, one of the *Avera* criteria for an award of interim fees is whether a matter requires the services of "costly experts." *Avera*, 515 F.3d at 1352. I must therefore balance these considerations.

Here, I find that *some* expert costs award is appropriate. The total amounts expended on experts amount to what I would consider sufficiently "costly" to justify an interim award. Moreover, some of the expert reports submitted were prepared at my direction, in order to bulwark aspects of the case I determined required further elucidation. And it appears counsel has covered many of these expert-related costs already – another factor militating in favor of an interim award. Ex. A. to Fees App. at 7.

However, there are other factors relevant to my consideration that weigh in favor of some reduction to the amount awarded. I cannot at this time evaluate whether and to what extent the expert testimony to be offered will merit the time that has been devoted to its development. In addition, both experts seeks reimbursement at a rate of $500 per hour – a sum at the top end of what experts in Program cases commonly receive. Indeed, Dr. Shoenfeld has been in the recent past limited to $400 per hour, even though he (as here) billed at a $500 hourly rate. *Laderer v. Sec'y of Health & Human Servs.,* No. 09-097V, 2016 WL 3044838, at *6 (Fed. Cl. Spec. Mstr. Apr. 20, 2016); *Rowan v. Sec'y of Health & Human Servs.,* No. 10-272V, 2014 WL 3375588, at *6 (Fed. Cl. Spec. Mstr. June 19, 2014) (interim fees award). I have found no cases in which Dr. Santoro's rate has been discussed. And Petitioners have not substantiated in their Fees Application why the $500 rate is appropriate for either expert.

Given all the above, I shall award the experts one-half of the time each billed to the matter, calculated at the rate of $400 per hour. Petitioners shall thus receive $8,700.00 for Dr. Santoro ($400 x 21.75 hours (43.5 hours requested)) and $2,800.00 for Dr. Shoenfeld ($400 x 7 hours (14 hours requested)). After the hearing (by which time Petitioners will have incurred additional costs associated with their experts' actual testimony), Petitioners may request the remainder of the billed time not presently awarded – and I can then better assess whether the experts were useful and/or necessary in establishing Petitioners' claim.

## IV.     Challenges to Other Costs

I find nothing objectionable about the remaining costs requested by Petitioners – nor does

Respondent, with the exception of sales tax[7] charged for attorney time (6.5 percent on the $21,780.00 billed, or $1,415.70) and sales tax for miscellaneous expenses ($48.56, presumably calculated at the same rate). *See* Ex. A. to Fees App. at 6-7. As Respondent points out, Petitioners have not substantiated why this tax reimbursement request is included in their Fees Application. However, it appears that South Dakota is one of the few states that requires attorneys to collect sales tax from their clients for professional services provided. *See* S.D. Codified Laws § 10-45-4 to 4.1 (2016). In addition, federal courts awarding attorney's fees (based on federal fees-shifting statutes, and where attorney work was performed in South Dakota) have included reimbursement for the collected sales tax in the award. *See, e.g., Soltesz v. Rushmore Plaza Civic Ctr.,* No. CIV. 11-5012-JLV, 2015 WL 5227845, at *7 (D. S.D. Sept. 8, 2015) (awarding fees under 42 U.S.C. § 1988(b)); *Hautala v. Progressive Direct Ins. Co.*, No. CIV.08-5003-JLV, 2010 WL 1812555, at *15 (D. S.D. May 3, 2010) (awarding fees under Fed. R. Civ. P. 37(a)(5)(A) for successful motion to compel).

Based on such precedent, and in the absence of any showing by Respondent that the Act says otherwise, I determine herein that the Petitioners are entitled to the billed amounts of sales tax. However, the sales tax on Mr. Trzynka's fees is recalculated based on the amount of fees awarded in this case: 6.5 percent of $20,480.00, or $1,331.20.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioners' interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Trzynka's Fees | $21,780.00 | $1,300.00 | $20,480.00 |
| Litigation Costs and Sales Tax | $2,227.33 | $84.50 | $2,142.83 |
| Dr. Santoro's Fees | $21,750.00 | $13,050.00 | 8,700.00 |
| Dr. Shoenfeld's Fees | $7,000.00 | $4,200.00 | $2,800.00 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for

---

[7] I note that sales tax has been treated as a component of attorney's fees, rather than a litigation-oriented cost. *Johnson v. Astrue*, No. CIV 10-4052-RAL, 2011 WL 4458850, at *11 n.5 (D. S.D. Sept. 23, 2011) ("the general practice of the District of South Dakota is to award taxes on attorney's fees as part of those fees"). I am nevertheless addressing the issue in my discussion of costs, both because of its novelty in Program fees awards matters, and also because fees and costs are subject to the same "reasonableness" standard (meaning that there is no prejudice to Petitioners if it is discussed as if it were a litigation cost).

Interim Attorney's Fees, awarding **$34,122.83** in interim fees and costs.[8] In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[9]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Because the total amount of the interim award is, serendipitously, just beneath the range proposed by Respondent as appropriate under the circumstances, I do not herein address her justifications for that range. *See* Opp. at 3-4.

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.